HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MAXINE SURBER,

Plaintiff,

v.

SHANGHAI ZHENHUA HEAVY INDUSTRIES CO., LTD.,

Defendant.

CASE NO. C14-5279-RBL

ORDER

DKT. #45

THIS MATTER is before the Court on Plaintiff Maxine Surber's Partial Motion for Summary Judgment [Dkt. #45]. Her husband, Jeffrey Surber, died while inspecting a crane designed and manufactured by Defendant Shanghai Zhenhua Heavy Industries Co., Ltd. (ZPMC). Surber sued ZPMC under a theory of strict product liability, alleging its unsafe design and construction violated the Washington Product Liability Act (RCW 7.72.030). Surber asks the Court to resolve six questions of fact on matters she alleges ZPMC has refused to admit. ZPMC argues genuine disputes exist, and the Court should not usurp the jury's fact-finding role by resolving them.

## I. BACKGROUND

In approximately 2004, ZPMC manufactured Crane 5 (also known as ZP03-388-5), a ship-to-shore container crane it modeled after a design from the 1990s. It delivered the crane to Hemlock Equipment, Inc. at the Port of Tacoma's Pierce County Terminal one year later. Hemlock hired Pacific Crane Maintenance Company (PCMC) to maintain the crane and to design its rope inspection protocols.

PCMC employees inspect cranes' cables monthly. One crew member drives the crane's trolley, which operates at a variable speed from 0 to 100 percent, the length of the crane, while two mechanics stand in the crane's trolley pit. They run their hands over the crane's cable, feeling and looking for any breaks in the wire. Three times they must dodge protruding slap rollers, which they announce to one another when the slap rollers enter their peripheral vision. The crew repeats this process for each of a crane's three wires and examines two cranes per day.

On March 12 2012, PCMC employee Jeffrey Surber and his crew members inspected three cranes—one more than is normal on a given day. While inspecting the third crane's catenary cables, neither Surber nor the other mechanic (Brett Lewis) called out the first slap roller. Surber's head was crushed between the roller block and the top of the trolley pit. He died shortly after. Lewis suspects Surber was standing in an especially dangerous position because he had noticed a wire break.

Surber's wife, and representative of his estate, claims ZPMC contributed to her husband's wrongful death. She claims ZPMC violated the WPLA by designing and constructing an unsafe crane and by not retrofitting it to make it safer. ZPMC claims Surber was contributorily negligent and assumed the known risks of maintaining a crane, Crane 5 was modified after leaving its care,

and it could not have foreseen that PCMC would direct its employees to follow unsafe maintenance procedures.

Surber seeks partial summary judgment on six facts she contends relate to elements of her claims, or to ZPMC's defenses:

1. Crane 5 was not modified after it left ZPMC's care.

2. ZPMC violated international safety standards either by not assessing or not documenting the crane's risks.

3. ZPMC could have reasonably foreseen that a slap roller could crush a maintenance worker inspecting a crane's cables from inside the trolley pit.

4. ZPMC could have reasonably foreseen that a maintenance worker would use a tactile inspection method, running the cable through his hands while the trolley moved, to look for wire breaks.

5. ZPMC warned of the crane's risks to cable inspectors but did not eliminate or safeguard against those risks.

6. Warning of a hazardous risk is the "least effective" method for protecting against it.

Surber supports her arguments three ways: with affidavits, by pointing to a lack of evidence produced by ZPMC, and by using ZPMC's testimony against it. She offers three affidavits—one from a mechanic who frequently inspected Crane 5, Dan Brixie; one from PCMC's vice president of Pacific Northwest operations, Brian McGonegle; and one from the executive vice-president, David Chiu, of North American Consulting Corporation, which Hemlock hired to supervise PCMC—to demonstrate there is no evidence supporting ZPMC's defense that Crane 5 was modified. She points to ZPMC's inability to produce documentation

that it assessed Crane 5 to argue it did not do so or did not document doing so, in violation of international standards. Surber relies on ZPMC-representative Ms. Mao's testimony that (1) it was foreseeable mechanics would run cables through their hands to inspect them, (2) the slap rollers' presented a foreseeable crushing hazard, and (3) by only warning against this hazard, ZPMC employed the least effective protective measure, to support her remaining statements of fact, arguing it binds ZPMC.

ZPMC argues these facts are genuinely disputed, and that it is therefore not within the Court's province to resolve them. It offers no evidence refutting Surber's evidence that Crane 5 was not modified while at the Port of Tacoma. It produces an undated risk assessment of another crane to suggest it assessed Crane 5. ZPMC offers expert testimony that the slap rollers' crushing hazard was unforeseeable because no one else has died this way and that it safeguarded against this risk anyway because it designed a stoppable trolley.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248–50, 106 S. Ct. 2505 (1986); *see also Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *See Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. The moving party bears the initial burden of showing no evidence exists that supports an element essential to the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). Once the movant has met this burden, the nonmoving party then must show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

**B. Alleged Statements of Fact**

Surber asks the Court to narrow the issues for trial by declaring six statements of fact undisputed. For support, she relies upon affidavits, points to ZPMC's lack of evidence, and argues Ms. Mao's testimony functions as a judicial admission, binding ZPMC. ZPMC mainly relies on expert testimony to argue a genuine dispute surrounds each of these statements.

Surber proffers Brixie's, McGonegle's, and Chiu's averments that Crane 5 was not modified after delivery. ZPMC offers no rebuttal evidence. It instead argues a jury should assess the witnesses' credibility.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *See Anderson*, 477 U.S. at 249. By not presenting evidence refutting Surber's affidavits averring Crane 5 was not modified, ZPMC fails to establish a genuine dispute for trial. Except for one expert witness, discovery closed months ago. ZPMC has had approximately two years to find evidence of any modification. Because ZPMC has provided no evidence such that a reasonable jury could return a verdict in its favor, Surber is entitled to summary judgment on this point as a matter of law.

Surber asks the Court to conclude ZPMC violated international safety standards, either by not assessing or not documenting Crane 5's risks. She argues proof of whether ZPMC did so lies entirely within ZPMC's control. ZPMC offers an undated assessment of another crane, arguing this documentation suggests ZPMC assessed Crane 5's risks, too. It also argues a jury should conclude what risk analyses the non-binding international standards require.

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. A jury must infer whether the absence of documentation showing that ZPMC assessed Crane 5's risks indicates ZPMC did not conduct a risk assessment or ZPMC merely lost the assessment's paperwork.

Surber asks the Court to conclude ZPMC could have reasonably foreseen that protruding slap rollers "present a crushing hazard" to mechanics inspecting cable wires with their hands and that ZPMC only warned of Crane 5's risks—the "least effective" protection method. She argues Ms. Mao's testimony binds ZPMC, leaving no genuine dispute for trial. ZPMC argues the jury must determine foreseeability. It uses expert testimony to argue it could not have foreseen how mechanics would examine the crane's cables or how the slap rollers' could harm them. Its experts also allege ZPMC safeguarded against a crushing hazard by designing a trolley that could operate at a variable speed.

The Ninth Circuit has not yet decided whether a corporation's representative's testimony binds the corporation as does a judicial admission. *See MKB Constructors, v. American Zurich Ins. Co.*, 49 F. Supp.3d 814, 829 n. 11 (W.D. Wash. 2014) (considering the implications of a Rule 30(b)(6) witness's testimony). The court has concluded "a party cannot rebut the testimony

of its Rule 30(b)(6) witness when … the opposing party has relied on the [representative's] testimony, and there is no adequate explanation for the rebuttal." *See id*.

Here, Surber could not have fairly relied on Ms. Mao's testimony on the foreseeability of the crane's uses and harms and on the effectiveness of ZPMC's warnings when she gave it over ZPMC's attorney's objections. ZPMC's attorney objected that Surber was improperly asking Ms. Mao to draw legal conclusions and to offer expert opinions. Her testimony therefore does not bind ZPMC, but it is subject to cross-examination. The dispute between her testimony and ZPMC's experts' demonstrates the existence of a genuine dispute on whether ZPMC could have foreseen the crane's uses and potential harms[1] and whether it safeguarded against those.

## III. CONCLUSION

The undisputed evidence demonstrates Crane 5 was not modified after its delivery to Hemlock at the Pierce County Terminal. The remaining factual issues are genuinely disputed, however, and so remain for a jury's consideration. If Surber prevails, she may ask the Court for any fees acquired while proving facts, if material, that she asked ZPMC to admit. Surber's Partial

//

//

//

//

//

[1] Even setting aside the reality that the Court cannot resolve factual disputes when considering a summary judgment motion, the Court questions why Surber asks it do so on foreseeability issues, which are immaterial: Foreseeability is not an element of a strict products liability claim under the WPLA. *See Macias v. Saberhagen Holdings, Inc.*, 175 Wash.2d 402, 409, 282 P.3d 1069 (2012) (citing *Ayers ex rel. Ayers v. Johnson & Johnson Baby Prods. Co.*, 117 Wash.2d at 760–62, 818 P.2d 1337 (1991)).

Motion for Summary Judgment [Dkt. #45] is GRANTED IN PART and DENIED IN PART without prejudice.[2]

IT IS SO ORDERED.

Dated this 21st day of July, 2016.

Ronald B. Leighton
United States District Judge

[2] Additionally, Surber moves to strike ZPMC's document detailing another crane's risk assessment and ZPMC's experts' testimony on the foreseeability of Crane 5's uses and associated harms [Dkt. #53, Reply]. ZPMC did not have an opportunity to respond. Surber's motion is DENIED without prejudice.